THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RENEE HENDERSON, Defendant-Appellant.

Fifth District    No. 75-268

Opinion filed October 26, 1976.

G. J. MORAN, J., dissenting.

Stephen P. Hurley and Ann L. Carr, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Donald E. Irvin, State's Attorney, of Mt. Vernon (Bruce D. Irish and James G. Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

On April 3, 1975, a complaint was filed charging defendant, Renee Henderson, with having committed an offense of forgery on April 2, 1975, in that she delivered a forged prescription form to a pharmacy in violation of section 17—3 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 17—3(a)(2)). On the day the complaint was filed, defendant was brought before the court, waived counsel, waived indictment, entered a negotiated plea of guilty to the charge of forgery, and was sentenced to a term of imprisonment of one to three years. Defendant has appealed and raises three issues: (1) whether defendant's waiver of counsel was fatally defective; (2) whether defendant's waiver of indictment was fatally defective; and (3) whether the passage of the Illinois Controlled Substances Act (Ill. Rev. Stat., ch. 56½, par. 1100 et seq.) preempted, in toto, prosecution under section 17—3 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 17—3) for delivery of a forged prescription form. The State has confessed error with respect to the first two issues; we need, therefore, discuss only the third issue raised.

The factual basis for defendant's plea, as recited by the State's Attorney, was the following. On April 2, 1975, defendant entered a named pharmacy and tendered a prescription form to the pharmacist, which bore the forged signature of a physician. The police were called, and when they arrived defendant ran. Later that day defendant made a statement to the police in which she admitted that she knew that the prescription was not legitimate. According to the complaint filed in this case the drug which defendant attempted to acquire by means of the forged prescription was "preludin," a form of phenmetrazine, a controlled substance under section 208(b) of the Controlled Substances Act (Ill. Rev. Stat., ch. 56½, par. 1208(b)).

■■ Defendant argues that "the Illinois legislature has determined that offenses involving prescriptions for drugs, and more specifically the presentation of a forged prescription form in order to obtain drugs, are cognizable under the Controlled Substances Act, and not under the Criminal Code" and that, therefore, the State was "without authority to charge the offense" of forgery and "the court was without authority to enter a judgment of conviction" for the offense. We cannot agree.

Section 17—3 of the Criminal Code provides:

"(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered." (Ill. Rev. Stat., ch. 38, par. 17—3(a).)

In discussing section 17—3 of the Criminal Code, we noted in *People v. Merchant*, 5 Ill. App. 3d 636, 638, 283 N.E.2d 724, 726, that:

"In *People ex rel. Miller v. Pate*, 42 Ill. 2d 283, 246 N.E.2d 225, the Supreme Court in considering the present forgery statute (Ill. Rev. Stat., ch. 38, sec. 17—3), commented that prior to the new Criminal Code separate statutes proscribed forgery of specified types of instruments or documents, but as presently defined in the new Criminal Code, the offense of forgery codifies and incorporates all forms of forgery into a single crime."

Forgery is referred to in section 406(b)(3) of the Controlled Substances Act, which provides:

"(b) It is unlawful for any person knowingly:

* * *

(3) to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." (Ill. Rev. Stat., ch. 56½, par. 1406(b)(3).)

It is apparent from the language of this section that in the instant case no violation of this section was committed; for in the instant case defendant did not "acquire or obtain possession of a controlled substance." Rather, defendant allegedly made only an unsuccessful attempt "to acquire or obtain possession" of the drug described in the illegitimate prescription.

The relationship between forgery, as defined in section 17—3(a) of the Criminal Code, and obtaining or acquiring possession of a controlled substance through the use of a forged prescription, as defined in section 406(b)(3) of the Controlled Substances Act, is somewhat analogous to the relationship between burglary and theft. The person who makes an authorized entry with intent to commit a theft therein commits a burglary whether or not the theft is ever accomplished. Similarly, the person who, with intent to defraud, knowingly issues or delivers a forged prescription form commits a forgery whether or not the drugs described in the illegitimate prescription are actually obtained. In short, although forgery will generally be the means of acquiring or obtaining money or property, forgery itself is an offense separate and distinct from the actual acquiring or obtaining of the money or property. Illustrative of this point is the

following statement from LaFave and Scott, Handbook on Criminal Law 671-72 (1972):

"Forgery, like false pretenses, requires an intent to defraud, but, unlike false pretenses, it does not require that anyone be actually defrauded of his money or property. One who has never had a chance to pass his forged document, or whose forgery is spotted when he tries to pass it, is nevertheless guilty of forgery. If he is successful in passing the forged document, receiving property or money for it, he is no doubt guilty of the crime of false pretenses in addition to that of forgery, much as one who breaks and enters a dwelling house with intent to steal, and then does steal, is guilty of both burglary and larceny."

■■ Although defendant's alleged conduct did not violate section 406(b)(3) of the Controlled Substances Act the alleged conduct would constitute a violation of section 406(b)(6) of that Act. That section provides:

"(b) It is unlawful for any person knowingly:

* * *

(6) to possess without authorization, official blank prescription forms or counterfeit prescription forms." (Ill. Rev. Stat., ch. 56½, par. 1406(b)(6).)

The question then is whether this section provides an exclusive remedy for prosecuting conduct such as that allegedly committed by defendant. We think not.

In *People v. Merchant* this court was asked to answer the same question with respect to former section 22—39 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 22—39), a predecessor to present section 406(b) of the Controlled Substances Act. In *Merchant* we stated:

"While it is clear that prosecution of defendant in this case could have been made under the statute cited, it nowise follows that such statute was exclusive. The acts of defendant revealed by the record would have constituted a violation of either of the statutes alluded to and there is nothing to have prohibited the State's Attorney from making an election of the statutes under which he would proceed." (5 Ill. App. 3d 636, 639, 283 N.E.2d 724, 726.)

What we said in *Merchant* is no less applicable here than it was in that case, particularly in light of the more recent decisions in *People v. Gordon*, 64 Ill. 2d 166, 355 N.E.2d 3, and *People v. Roberts*, 27 Ill. App. 3d 489, 326 N.E.2d 116. In both of those cases the courts were asked to decide substantially the same question as we are asked to decide here.

In *Roberts* the defendant had been indicted for and convicted of forgery for the fraudulent use of a credit card to purchase $3 worth of gasoline. The defendant argued that he should have been charged under

the deceptive practices statute (Ill. Rev. Stat. 1971, ch. 38, par. 17—1), since the fraudulent use of credit cards was extensively dealt with in that section of the Criminal Code, as it was then in effect. (Since the time of the defendant's prosecution in *Roberts*, section 17—1 of the Criminal Code has been amended and fraudulent use of credit cards is now covered by the Illinois Credit Card Act (Ill. Rev. Stat., ch. 121½, pars. 601 through 624).) The defendant in *Roberts* argued that since the enactment of the deceptive practices statute post-dated the enactment of the forgery statute, he should have been prosecuted under the later and more specific deceptive practices statute rather than under the general provisions of the forgery statute. The defendant in *Roberts* sought to take advantage of the fact that deceptive practices involving less than $150 was a less serious offense and carried a more lenient penalty than did forgery. (Compare Ill. Rev. Stat. 1971, ch. 38, par. 17—1, with Ill. Rev. Stat. 1971, ch. 38, par. 17—3(d).) Defendant in the instant case seeks to take advantage of a similar fact. Compare Ill. Rev. Stat. 1975, ch. 56½, par. 1406(b), with Ill. Rev. Stat. 1975, ch. 38, par. 17—3(d).

■■ In rejecting the arguments of the defendant in *Roberts* the appellate court in that case stated:

"Principal reliance is placed upon the case of *Ashton v. County of Cook*, 384 Ill. 287, 51 N.E.2d 161 (1943), and the decision of this court in *People v. Gardner*, 15 Ill. App. 3d 255, 304 N.E.2d 125 (3rd District 1973). It is clear that in Illinois, if conduct for which a defendant is prosecuted constitutes a felony under one act and a misdemeanor under another, the State's attorney has discretion to prosecute under either, or both, and there is no error in a defendant being convicted of the more serious offense so charged. (*People v. McCollough*, 57 Ill. 2d 440, 313 N.E.2d 462 (1974); *People v. Keegan*, 52 Ill. 2d 147, 286 N.E.2d 348 (1971); *People v. Rhodes*, 38 Ill. 2d 389, 231 N.E.2d 400 (1967).) We conclude, on the basis of precedents and an examination of the record, that if defendant's conduct constituted forgery (which he concedes for the sake of argument on this point), then he could be prosecuted for that crime even though the conduct also constituted the lesser crime of deceptive practices. Defendant relies on the language in *Ashton v. County of Cook*, 384 Ill. 287, 298, 51 N.E.2d 161, that 'where there is to be found in a statute a particular enactment, it is to be held operative as against the provisions on the subject either in the same act or in general laws relating thereto.' We had occasion to refer to *Ashton* in *People v. Gardner*, 15 Ill. App. 3d 255, 304 N.E.2d 125. In the *Gardner* case, defendant was convicted of escape from the penitentiary, as opposed to a more general escape statute, which

did not designate escape from the penitentiary and which provided less severe penalties. In upholding the conviction, we relied on the language of *Ashton* referred to, in suggesting that it was proper to prosecute defendant under the more particular statute when it was applicable. We did not there hold, or even indicate, that it would have been error to convict someone under the general provisions, where no more severe penalty is mandated in a particular act. Defendant's conduct under the precedent of *People v. McCollough*, 57 Ill. 2d 440, 313 N.E.2d 462, could be prosecuted as forgery even though it may also have constituted a deceptive practice under the more specific and recent statute. The deceptive practice statute did not purport to provide an exclusive basis for prosecution for credit card violations." 27 Ill. App. 3d 489, 491, 326 N.E.2d 116, 117-18.

■■ In *Gordon* the defendant had been indicted for conspiracy to commit theft and for theft over $150. He argued before the trial court that since the charges arose in connection with his services as a real estate broker, he could have been charged only under section 16 of the Real Estate Brokers Act (Ill. Rev. Stat. 1971, ch. 114½, par. 16) but not under the Criminal Code. The trial court accepted the argument and dismissed the indictments. The appellate court reversed (32 Ill. App. 3d 378, 336 N.E.2d 321). The case then came before the supreme court on the defendant's petition for leave to appeal, and the supreme court affirmed the judgment of the appellate court. The basis for the supreme court decision was that the proof required for a conviction under the Real Estate Brokers Act was different than the proof required for a conviction for conspiracy or theft under the Criminal Code. The court stated:

"The defendant argues that section 16 [of the Real Estate Brokers Act] and the above mentioned sections of the Criminal Code 'relate to the same general subject matter' and contends that where the legislature treats a subject 'in a minute and definite way,' the special law, section 16 of the Real Estate Brokers Act in this case, shall take effect over the more general law. 'Accordingly,' the defendant contends, he 'was not amenable to prosecution under the general theft statute.' Special legislation, he says, must take precedence or the will of the legislature will be circumvented.

The defendant's arguments do not persuade. The basic error is that he proceeds on the assumption that section 16 of the Real Estate Brokers Act proscribes the same conduct as is proscribed by sections 8—2, 16—1(a)(1) and 16—1(b)(1) of the Criminal Code. Manifestly this is not so. Section 16 is violated if a broker fails to account or remit or commingles property of his principal with

his own, regardless of his intention or mental state in doing so. The section makes a real estate broker strictly liable for his actions in dealing with property of his client. If he does not remit or account or if he commingles his and his client's funds he is, without more, guilty of a misdemeanor.

The proof required for a conviction under sections 8—2, 16—1(a)(1) and 16—1(b)(1) is far different. * * *

It is clear that when a defendant's act has been in violation of more than one statute, and each statute requires different proof for conviction (though there may be some overlapping), or provides for different defenses, the defendant may be prosecuted under the statute which provides for the greater penalty. *People v. Keegan*, 52 Ill. 2d 147; *People v. Barlow*, 58 Ill. 2d 41; *People v. Parks*, 48 Ill. 2d 232.

The offenses charged in the indictment had elements not required for a violation of section 16."

■■ The rationale of the *Gordon* decision is also applicable in the instant case. In this case defendant was charged with forgery under section 17—3(a)(2) of the Criminal Code. Accordingly, in order to convict defendant the prosecution would have to prove that defendant, *with intent to defraud*, knowingly issued or delivered a document apparently capable of defrauding another. However, had defendant been charged with a violation of section 406(b)(6) of the Controlled Substances Act, the prosecution would have to prove that defendant possessed either a blank prescription form or a counterfeit prescription form and that defendant's possession was unauthorized. Moreover, had defendant obtained or acquired possession of a controlled substance through the use of a forged prescription, and had defendant thereafter been charged with a violation of section 406(b)(3) of the Controlled Substances Act, the prosecution would have to prove not only the elements of forgery under section 17—3 of the Criminal Code, but also that defendant *actually obtained* the drug described in the prescription and that the drug was a controlled substance. It is apparent, therefore, that different elements of proof would be required under the Controlled Substances Act than would be required under section 17—3 of the Criminal Code, even though some of the elements may overlap.

In light of the above authorities, we cannot agree with defendant's contention that passage of the Controlled Substances Act preempted, *in toto*, prosecution under the Criminal Code for delivery of a forged prescription form to a pharmacist. Therefore, we find no error in the State's prosecuting defendant under the Criminal Code. However, in view of the State's confession of error with respect to the first two issues

mentioned above, this cause is reversed and remanded for defendant to plead anew.

Reversed and remanded.

CARTER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I believe that my dissent in *People v. Merchant*, 5 Ill. App. 3d 636, 283 N.E.2d 724, adequately reflects my sentiment toward the majority opinion in this case; however, the importance of some of those factors presented merits repetition and emphasis in this case.

The forgery statute under which the defendant was charged (Ill. Rev. Stat. 1975, ch. 38, par. 17—3(a)) contains an essential element which is not apparent in the conduct giving rise to the charge in this case: "any document apparently capable of defrauding another * * *." The inclusion of this language clearly indicates a legislative purpose to outlaw conduct associated with false documents whereby one seeks to obtain a pecuniary advantage over another, for the common dictionary meaning of "defraud" is to "deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice * * *." (Black's Law Dictionary 511 (4th ed. 1968).) However, there was no effort to procure any such pecuniary advantage in this case. Admittedly, the defendant here presented a drug prescription which contained an erroneous signature. But this prescription was not capable of defrauding another within the meaning of our present forgery statute for it would not have allowed the defendant to secure any economic advantage over any particular person or company involved. Defendant did not attempt to obtain drugs without paying for them nor did she present any document which would expose any third party to economic liability. Rather, she presented a false prescription apparently with the full intention of paying for the drugs. As such, her conduct would in no way defraud the doctor whose name had been placed on the prescription form nor would it defraud the establishment to whom the prescription was presented. It is thus my opinion that this was not a crime against any particular person or business establishment, but was a crime against the People of the State of Illinois and was punishable, if at all, under the Controlled Substances Act of this State.

It is for basically the same reason that I cannot agree with the majority's analogy of prosecution under the Controlled Substances Act and prosecution under the general forgery statute to the crimes of burglary and theft. While the crimes of burglary and theft possess different basic elements, they are both offenses against property. While this is true of a

crime under the general forgery statute, it is not so of an offense prosecuted under the Controlled Substances Act. In addition, I find that those recent decisions relied upon by the majority are inapplicable to this case for the same reason: The possible offenses chargeable in each case were both crimes affecting property. Thus, there was a readily ascertainable victim, while the falsification of a drug prescription produces no such effect.

A falsified prescription for a narcotic drug is not an instrument which calls for the payment of money or one which on its face creates duties or obligations. In short, it is not the type of document which gives rise to a crime against property; rather, it affects the public health, safety and decency. Accordingly, I believe it wholly improper to charge and prosecute such an action under the general forgery statute.