2026 IL App (3d) 250122

Opinion filed March 18, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0122 Circuit No. 20-CF-2071 |
| VICTORIA DAVIS, | ) ) ) | The Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justices Holdridge and Brennan concurred in the judgment and opinion.
_____

**OPINION**

¶ 1    Defendant, Victoria Davis, presented a fabricated child custody order to a Monee police officer. The State charged her with forgery (720 ILCS 5/17-3(a)(2) (West 2020)), and she was ultimately convicted. Defendant appeals her conviction, arguing that the State failed to prove that she caused financial loss to another or brought financial gain to herself. The legal issue we address is whether the statute requires such a showing. We find that it does and reverse her conviction.

I. BACKGROUND

¶ 3        At defendant's bench trial in the Will County circuit court, the State presented evidence that, in August 2020, defendant spoke with Monee police officer Anthony Lazzaroni and told him that her mother, April Ashford, was the guardian, and had custody, of defendant's son. She complained that Ashford had not allowed defendant to see her son for six months. Lazzaroni asked defendant if she had any legal documents to show she could have custody of her child, and defendant stated she had none. Lazzaroni subsequently told defendant that he had unsuccessfully attempted contact with Ashford and that, if defendant could obtain paperwork to support her right to custody, she should bring it to the police department.

¶ 4        In December 2020, defendant contacted the Monee Police Department, and Officer Stephen Crescenti was dispatched to Ashford's home to monitor a custody exchange. Defendant presented Crescenti with a copy of purported letters of office naming defendant as guardian of the person of her son and authorizing her to have custody of her son. Officer Crescenti thought that the order, purportedly entered by a Cook County circuit court judge, "appeared off" and that it may have been altered because it was a bad copy. Crescenti asked defendant to follow him to the Monee police station so that he could look into the authenticity of the court order. Defendant followed Crescenti to the station, waited five minutes, and left. Defendant and Crescenti spoke on the phone later that day. He explained that he was trying to verify her paperwork and that he wanted to ask her additional questions; she informed him it was not his job to verify if it was real but only to give back her son.

¶ 5        The executive clerk of information and technology and chief information officer at the Cook County circuit court testified that the order defendant gave to Crescenti had numerous errors indicating it was not valid. Those errors included the child custody case being filed in the juvenile

division, not the probate court; the absence of any record of a probate case involving the child; and the lack of any letters of office issued by a probate court. Moreover, the order identified the Cook County Clerk, not the Clerk of the Circuit Court, the seal on the document was incorrect, and the lines of purported order were crooked.

¶ 6        Defendant also testified. She claimed that she had obtained the "order" from the Cook County Circuit Clerk's Office on December 6 or 7, 2020, and that she had not altered the document or had someone else alter it before presenting it to the police. Defendant also offered the testimony of her friend and roommate, Michelle Huggins, to support her claims.

¶ 7        The trial court found defendant guilty of forgery. The court stated in its ruling that it was "clear from all of the evidence that it was a false document and it is clear from all the evidence that [defendant] delivered [it] to the Monee Police Department." The court further said, "I believe it was capable of defrauding another and that the evidence supports that and all the circumstantial evidence supports *** that [defendant] knew it was false when [she] delivered it." Defendant filed a motion for a new trial, which was denied. In March 2025, the court sentenced defendant to 24 months of probation and payment of $2,718 in fines and fees. Defendant filed a timely appeal.

¶ 8                                II. ANALYSIS

¶ 9        Defendant seeks to reverse her conviction for forgery (*id.*). She argues that the current version of the forgery statute requires that the State prove beyond a reasonable doubt that she acted "knowingly, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another or bringing some financial gain to oneself." *Id.* §§ 17-3(a)(2), 17-0.5 (providing definitions). No evidence of financial gain or loss was presented at trial. The sole issue for us to resolve is whether the forgery statute requires such proof.

¶ 10                            A. Standard of Review

¶ 11 Normally, if a defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In this case, however, the relevant issue is not the factual question of the sufficiency of the evidence but the legal question of whether the forgery statute requires proof of financial gain or loss to establish the requisite mental state for forgery. The interpretation of a statute is a question of law and is reviewed *de novo*. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16; *People v. Jackson*, 2011 IL 110615, ¶ 12.

¶ 12                            B. The Prior Forgery Statute

¶ 13 Before we analyze defendant's arguments, a little context is necessary to reconcile today's decision with older decisions. The forgery statute previously stated: "(a) A person commits forgery when, with intent to defraud, he knowingly: (1) makes or alters any document apparently capable of defrauding another *** or (2) issues or delivers such document knowing it to have been thus made or altered ***." 720 ILCS 5/17-3(a)(1), (2) (West 2008). The term "intent to defraud" was defined within the forgery section of the statute and stated "(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter, or terminate any right, obligation or power with reference to any person or property." *Id.* § 17-3(b).

¶ 14 The State correctly points out that, prior to the 2011 amendments, courts had interpreted the forgery statute to allow convictions for falsified documents that did not cause a direct financial injury or property loss. See *People v. Muzzarelli*, 331 Ill. App. 3d 118, 121-22 (2002) (forged leniency letter to judge); *People v. Gawlak*, 276 Ill. App. 3d 286 (1995) (forged hazardous waste labels); *People v. Merchant*, 5 Ill. App. 3d 636 (1972) (forged prescription). In *Muzzarelli*, the

4

defendant argued she had no "intent to defraud" because no financial injury or property loss occurred. *Muzzarelli*, 331 Ill. App. 3d at 121-22. The court looked at the language defining "intent to defraud" within the statute and, because it made no specific reference to financial loss but instead included broad language referring to a "right, obligation or power with reference to any person or property," determined that "intent to defraud," as defined, did not require a pecuniary loss. (Internal quotation marks omitted.) *Id.*

¶ 15                                    C. The Current Forgery Statute

¶ 16        In 2011, however, the legislature amended the Criminal Code of 1961 (later changed to the Criminal Code of 2012 (Pub. Act 97-1108 (eff. Jan. 1, 2013))) (Code) and created a new definition section that included today's definition of "intent to defraud." See Pub. Act 96-1551, § 5-5 (eff. July 1, 2011) (adding 720 ILCS 5/17-0.5). The sections covering forgery and deceptive practices were also each amended, incorporating the newly defined "intent to defraud" phrase. See 720 ILCS 5/17-1, 17-3 (West 2012).

¶ 17        The modern forgery statute, at first glance, seems straightforward. A person commits forgery when, "with intent to defraud, he or she knowingly: (1) makes a false document or alters any document to make it false and that document is apparently capable of defrauding another; or (2) issues or delivers such document knowing it to have been thus made or altered." 720 ILCS 5/17-3(a) (West 2020). There seems to be no real question that defendant did this.

¶ 18        However, the wrinkle in this case appears when we consider the general definitions section of the deception and fraud portion of the Code. That part of the statute defines "with intent to defraud" to mean when a person acts "knowingly, and with the specific intent to deceive or cheat, *for the purpose of causing financial loss to another or bringing some financial gain to oneself ***.*

5

This includes an intent to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property." (Emphasis added.) *Id.* § 17-0.5.

¶ 19                                   D. Defendant's Argument

¶ 20        Defendant argues that today's forgery statute, and the legislature's inclusion of a new financial harm or gain component, requires that her conviction be overturned. We must agree.

¶ 21        The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Brown*, 2013 IL 114196, ¶ 36. The most reliable indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning. *Id.* Courts consider a statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* Every word, clause, and sentence of a statute must be given a reasonable meaning where possible and should not be rendered superfluous. *Id.* A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the expressed legislative intent. *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14.

¶ 22        Applying those principles to the instant case, we must conclude that the absence of any evidence of financial loss or gain means the State failed to prove its case. The plain language used to define "with intent to defraud" establishes that forgery requires a knowing act done with the specific intent to deceive or cheat for the purpose of financial gain to oneself or loss to another. Each of the elements of "knowingly," "specific intent," and "for the purpose" appear in the same sentence and constitute a comprehensive description of the required mental state. The grammatical structure of the sentence confirms that conclusion, with "knowingly" tied to "specific intent" by the use of the connector "and" and "for the purpose of" appearing directly after the "specific intent" phrase without any qualifying or separating connectors.

6

¶ 23    Further, the phrase "for the purpose of" in a criminal statute is routinely used to describe a more culpable mental state, such as a requirement of specific intent. See *People v. Frieberg*, 147 Ill. 2d 326, 345 (1992) (distinguishing the use of "purpose" in a statute that did not specify a specific intent). Although "purpose" is not expressly defined in the Code, its ordinary and popularly understood meaning is as "an end or aim to be kept in view in any plan, measure, exertion, or operation" and "an object, effect, or result aimed at, intended, or attained." Webster's Third New International Dictionary 1847 (1986); see *Frieberg*, 147 Ill. 2d at 347. In this case, the additional qualifier to the requirement of "specific intent" is "for the purpose of causing financial loss to another or bringing some financial gain to oneself," further refining the mental state requirement. 720 ILCS 5/17-0.5 (West 2020).

¶ 24    We are not swayed by the State's reliance on the additional statutory language that intent to defraud "includes an intent to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property." *Id.* The legislature's introductory use of "[t]his includes" creates a nonexclusive list of possible variations for a specific intent to deceive. *Id.* It does not in any way negate the additional, express statutory requirement of proof that the defendant had "the specific intent to deceive or cheat, *for the purpose of causing financial loss to another or bringing some financial gain to oneself*." (Emphasis added.) *Id.* Again, we must give meaning to each of the words and clauses in the statute without rendering any part superfluous, if possible. *Hartney*, 2013 IL 115130, ¶ 25. That rule of construction precludes us from construing the "[t]his includes" sentence to mean that the preceding "for the purpose" clause may or may not be applicable.

¶ 25    In short, the forgery statute requires an "intent to defraud." 720 ILCS 5/17-3 (West 2020). The plain and ordinary language of the definition of "intent to defraud" means the applicable

7

mental state for forgery expressly includes the specific intent to obtain financial gain for oneself or to cause financial loss to another. Accordingly, the State must show proof beyond a reasonable doubt of an intent to defraud that relates to a pecuniary interest as a mandatory element of forgery.

¶ 26     The State concedes that it presented no evidence that defendant acted for either financial gain or another's loss in this case. The State's failure to prove an essential element of forgery, namely the "intent to defraud," mandates reversal of the defendant's conviction.

¶ 27     Nonetheless, the State argues that forgery should also include using fraudulently altered documents to obtain nonpecuniary rights or benefits. We, of course, share the State's concerns and condemn the use of fabricated court orders. The judiciary, however, does not determine what acts ought to constitute the offense of forgery; that is for the legislature to decide. If the legislature wishes to broaden the forgery statute's sweep to include fabricating documents for nonmonetary gain or loss, it is fully empowered to do that. Perhaps defendant's conduct fell within the ambit of some other crime and could have been properly charged. However, just as we may not enact statutes, we also may not prepare charging instruments.

¶ 28                                              III. CONCLUSION

¶ 29     The current forgery statute (*id.*) required the State to prove defendant had the requisite intent to defraud, as defined by the statute (*id.* § 17-0.5). That definition requires proof of financial gain to defendant or financial loss to another. Because the State failed to present sufficient evidence on that element, defendant's conviction for forgery must be reversed.

¶ 30     Reversed.

*People v. Davis*, 2026 IL App (3d) 250122

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 20-CF-2071; the Hon. Amy M. Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Adam N. Weaver, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Korin I. Navarro, of State's Attorneys Appellate Prosecutor's Office, of counsel (Mateo Rodriguez, law student)), for the People. |